**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

DEBORAH A. PERLICK,
          Appellant,

      v.

DEPARTMENT OF VETERANS
    AFFAIRS,
          Agency.

DOCKET NUMBER
NY-1221-19-0052-X-1

DATE: September 27, 2022

# THIS ORDER IS NONPRECEDENTIAL[1]

Robert B. Stulberg, Esquire, New York, New York, for the appellant.

Mark E. Frassinelli, Esquire, Pittsburgh, Pennsylvania, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**ORDER**

¶1       In a January 12, 2022 compliance initial decision, the administrative judge found the agency in partial noncompliance with the Board's final decision in the underlying appeal. *Perlick v. Department of Veterans Affairs*, MSPB Docket No.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

NY-1221-19-0052-C-1, Compliance File, Tab 6, Compliance Initial Decision (CID); *Perlick v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-19-0052-W-2, Appeal File, Tab 18, Initial Decision (ID). For the reasons stated below, we find that the agency continues to be in noncompliance and ORDER appropriate relief.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2 In a January 12, 2022 compliance initial decision, the administrative judge found the agency in partial noncompliance with the Board's December 23, 2020 final decision in the underlying appeal[2] because the agency had failed to pay the appellant all the back pay to which she was entitled, with interest; had not adjusted the appellant's benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations; and had not informed the appellant in writing of all the actions the agency had taken to comply with the Board's order and the date on which the agency believed it had fully complied. In regard to back pay specifically, the administrative judge found that while the agency had paid the appellant $48,716.66, representing back pay for the period between November 4, 2017, and June 6, 2018, it still owed the appellant back pay from June 7, 2018, through March 31, 2020. *See* CID at 2 n.2, 3-5

¶3 The administrative judge ordered the agency to "[p]ay appellant . . . for the appropriate amount of back pay, with interest, through March 31, 2020, minus . . . []$48,716.66[,] and to adjust her benefits with appropriate credits and deductions (among these a credit of $11,359.44 in Thrift Savings Plan deductions and $1,668.72 in health insurance for the back pay period)." CID at 5. The administrative judge further ordered the agency to "[i]nform appellant in writing

---

[2] The administrative judge's December 23, 2020 initial decision in the underlying appeal became the final decision of the Board by operation of law on January 27, 2021, after neither party filed a petition for review. ID at 27.

of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied." *Id.*

¶4    The agency thereafter did not file a timely pleading with the Clerk of the Board.[3] *Perlick v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-19-0052-X-1, Compliance Referral File (CRF), Tab 1 at 2.  Accordingly, the appellant's petition for enforcement has now been referred to the Board for a final decision on issues of compliance pursuant to 5 C.F.R. § 1201.183(c)(1).

¶5    On February 17, 2022, the Office of the Clerk of the Board issued an acknowledgment order in the instant proceeding advising the parties that the petition for enforcement had been referred to the Board for a final decision and ordering the agency to submit evidence of compliance within 15 calendar days. CRF, Tab 1 at 3.  On March 2, 2022, the agency filed its response, in which it represented that it was in full compliance with the compliance initial decision because it:  (1) sent the appellant's representative a bulleted list of the personnel actions it had taken to effectuate the back pay payment to the appellant;

---

[3] As noted in the compliance initial decision, the Board's regulations provide that, upon a finding of noncompliance, the party found to be in noncompliance must do the following:

> (i) To the extent that the party decides to take the actions required by the initial decision, the party must submit to the Clerk of the Board, within the time limit for filing a petition for review under § 1201.114(e) of this part, a statement that the party has taken the actions identified in the initial decision, along with evidence establishing that the party has taken those actions.  The narrative statement must explain in detail why the evidence of compliance satisfies the requirements set forth in the initial decision.

> (ii) To the extent that the party decides not to take all of the actions required by the initial decision, the party must file a petition for review under the provisions of §§ 1201.114 and 1201.115 of this part.

5 C.F.R. § 1201.183(a)(6)(i)-(ii).  The Board's regulations further provide that if "a party found to be in noncompliance under paragraph (a)(5) does not file a timely pleading with the Clerk of the Board as required by paragraph (a)(6), the findings of noncompliance become final and the case will be processed under the enforcement provisions of paragraph (c)(1) of this section."  5 C.F.R. § 1201.183(b).

(2) attempted unsuccessfully to email the appellant's representative the Standard Form 50s (SF-50s) reflecting the personnel actions; (3) spoke with the appellant's representative by telephone on February 9 and 10, 2022; and (4) submitted a remedy ticket on February 9, 2022, to the Defense Finance and Accounting Service (DFAS) requesting DFAS to process the payment. CRF, Tab 2 at 4-5. On March 22, 2022, the appellant responded to the agency's statement of compliance and alleged that she had not received the payments she was owed outside of a check for $1,668.82, to compensate her for improper health insurance deductions. CRF, Tab 3 at 2. The appellant further noted that the agency still had not provided a detailed narrative explaining how its evidence of compliance satisfied the requirements of the compliance initial decision. *Id.*

¶6 On June 21, 2022, the Clerk of the Board issued an order directing the agency to respond to the appellant's challenges to its compliance submission. CRF, Tab 4 at 5. The Clerk further directed the agency to "identify, by name and address, the agency official charged with complying with the Board's order and provide evidence that it has informed such official in writing of the potential sanction for noncompliance . . . even if the agency asserts that it has fully complied with the Board's order." *Id.*

¶7 On June 30, 2022, the agency responded to the June 21, 2022 Order. In its response, the agency states that on May 9, 2022, the agency received notice of certified delivery to the appellant of a check in the amount of $174,302.28, which purportedly represented the back pay to which the appellant is entitled. CRF, Tab 5 at 5, 81-82. The agency has also resubmitted the same summary of personnel actions, SF-50s, and DFAS remedy ticket it attached to its March 2022 filing. *See id.* at 9-40. The agency has not explained how it calculated the back pay amount. The agency also has not identified the official charged with compliance. The agency asserts that it is in compliance and requests that the Board dismiss the petition for enforcement.

¶8       In reply, the appellant represented that the agency still had not provided her with a detailed, clear explanation of the calculations the agency made to determine the amounts due to her.  CRF, Tab 6 at 9.  Instead, the agency had sent the appellant Excel spreadsheets from DFAS that appeared to state the amounts due to her, but without an explanation of the codes and abbreviations used in the spreadsheets.  *Id.* at 9-10.  The appellant further argued that the agency had not carried its burden of proving compliance due to its failure to explain its calculations.  *Id.* at 10.  The appellant has requested an award of monetary sanctions and leave to file a claim for attorney fees and costs.  *Id.* at 11.

## ANALYSIS

¶9       In a compliance proceeding, the agency bears the burden of proving compliance with a Board order by a preponderance of the evidence.  5 C.F.R. § 1201.183(d).  "[A]n agency's evidence of compliance must include a clear explanation of its compliance efforts supported by understandable documentary evidence."  *Bruton v. Department of Veterans Affairs*, 111 M.S.P.R. 489, ¶ 13 (2009).  As we ruled in *Bruton*, a case which also concerned the provision of back pay and benefits, the agency's burden is as follows:

> To be in compliance regarding the provision of back pay, interest on back pay, and benefits, the agency must provide a detailed and clear explanation of the calculations it has made in determining the amount due the appellant.  Among other things, the agency must: 1) clearly set forth the gross amount due the appellant and show how that amount was determined; 2) clearly set forth the amount and reason for all deductions, reductions, and offsets from the gross amount due the appellant; 3) clearly set forth the source and amount of all checks or electronic payments already received by the appellant and provide evidence that such checks or electronic payments were received; and 4) clearly set forth the amount of interest due the appellant and how that amount was calculated.  The agency must also clearly set forth its calculations relating to the appellant's sick and annual leave balances, his Thrift Savings Plan account, including both the appellant's and the agency's contributions, and any other benefits of employment the appellant would have received but for the agency's unwarranted personnel

> action. . . . *In addition to the calculations, the agency must provide a clear and detailed narrative explanation of its calculations so that the Board may understand the calculations and verify that they are correct.* The agency must provide an explanation of all codes and abbreviations used in its documentation.

*Bruton*, 111 M.S.P.R. 489, ¶ 17 (footnotes omitted) (emphasis added). If the agency is found to be in noncompliance, then the Board may require the agency and the responsible agency official to show cause why sanctions should not be imposed, either personally, in writing, or both. 5 C.F.R. § 1201.183(c)(1).

¶10 In this case, the administrative judge issued orders in two measures: to pay the appellant the back pay and benefits to which she is entitled; and to inform the appellant in writing "of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied." CID at 5. We find that the agency has not demonstrated full compliance with either of these orders.

¶11 Regarding the first order, while the agency has shown that it delivered a check in the amount of $174,302.28 to the appellant, the agency has made no effort to prove to the Board that this amount is correct by explaining how the agency arrived at it. The agency also did not produce any documentary evidence to the Board to support any calculations it might have made. Instead, the agency produced SF-50s, which show that personnel actions were taken in accordance with the Board's underlying decision. While the SF-50s reflect the appellant's gross annual salary, they do not show "the gross amount due the appellant" for the relevant time periods, "the amount and reasons for all deductions, reductions, and offsets from the gross amount," "the amount of interest due the appellant," or the appellant's benefits. *Bruton*, 111 M.S.P.R. 489, ¶ 17. Given that the agency has not provided "a clear explanation of its compliance efforts supported by understandable documentary evidence," *Bruton*, 111 M.S.P.R. 489, ¶ 13, we determine that it has not met its burden of proof.[4] This burden rests with the

---

[4] That the appellant attached the documents her representative received from the agency regarding her back pay and benefits does not excuse the agency's failure to carry its

agency, and the agency cannot evade its responsibility by relying on unexplained calculations from its payor, DFAS. *See Raymond v. Department of the Navy*, 116 M.S.P.R. 223, ¶¶ 14-17 (2011) (rejecting "unsworn, vague" DFAS memorandum and spreadsheet as evidence of compliance with the agency's agreement to provide back pay to the appellant, in part because they lacked narrative explanation of calculations); *see also Tichenor v. Department of the Army*, 84 M.S.P.R. 386, ¶ 8 (1999) (rejecting the agency's argument that DFAS, not the agency, improperly withheld payment from the appellant because DFAS is the agency's agent and no indication existed that DFAS would have refused to pay the appellant if the agency ordered it to do so); *Bradstreet v. Department of the Navy*, 83 M.S.P.R. 288, ¶ 12 (1999) (holding that "any failure on the part of DFAS 'to follow through' or its 'extraordinary' processing requirements" did not "excuse the agency's substantial delay" in complying with interim relief order). The agency must timely work with DFAS to supply the required information in a form that the Board can understand.

¶12    Additionally, we note that the agency has not provided all the information to the appellant in writing as required. Here, the agency has shown that it sent the appellant's representative a list of personnel actions and eventually provided the appellant's representative with the SF-50s memorializing those actions. However, the agency did not inform the appellant's representative in writing of its efforts to process the back pay payment through DFAS (instead, the parties spoke by telephone), and there is no indication in the record that it informed the appellant's representative in writing that it had mailed the $174,302.28 check to

burden as required under our precedents. Further, the documents are not accompanied by any narrative or explanation that would help the Board to interpret them, contain multiple abbreviations that further obscure matters, and have been produced in a form where they are missing columns on both sides, such that the Board cannot glean the required information from the documents. *See* CRF, Tab 6 at 14-17, 31-35.

her. Thus, we find that the agency has not proven that it obeyed the order to inform the appellant in writing of the actions it took to comply.

## ORDER

¶13 Based upon the foregoing, we find the agency in noncompliance. Accordingly, we ORDER the agency to submit to the Office of the Clerk of the Board, within 20 days of this decision, satisfactory evidence of compliance with this decision.

¶14 To be in compliance regarding the initial decision's provision regarding back pay, the agency must provide detailed and clear documentation and data of the calculations it has made in determining the amount due the appellant. Among other things, the agency must: (1) clearly set forth the gross amount due the appellant and show how that amount was determined; (2) clearly set forth the amount and reason for all deductions, reductions, and offsets from the gross amount due the appellant; (3) clearly set forth the source and amount of all checks or electronic payments already received by the appellant and provide evidence that such checks or electronic payments were received; and (4) clearly set forth the amount of interest due the appellant and how that amount was calculated. The agency must also clearly set forth its calculations relating to the appellant's sick and annual leave balances, her Thrift Savings Plan account (including both the appellant's and the agency's contributions), and any other benefits of employment the appellant should have received but for the agency's unwarranted personnel action.

¶15 In addition to the calculations described in the previous paragraph, the agency must also provide a clear, detailed narrative explanation of its calculations so that the Board may understand the calculations and verify that they are correct. The agency must provide an explanation of all codes and abbreviations used in its narrative explanation and supporting documentation.

¶16      The appellant may respond to the agency's evidence of compliance within 10 days of service of the agency's evidence.  If the appellant does not respond timely, the Board may conclude that the agency's evidence is satisfactory and dismiss this case as moot.

¶17      We further ORDER the agency to submit to the Office of the Clerk of the Board, within 20 days of this decision, evidence that it has informed the appellant's representative, in writing, of the actions the agency has taken to comply with the Board's orders and the date on which it believes it has fully complied.

¶18      We further ORDER the agency to submit to the Office of the Clerk of the Board, within 20 days of this decision, the name and address of the agency official charged with complying with the Board's order and to provide evidence that it has informed such official in writing of the potential sanction for noncompliance as set forth in 5 U.S.C. § 1204(a)(2) and (e)(2)(A), even if the agency asserts that it has fully complied with the Board's order.  5 C.F.R. § 1201.183(a)(2).

¶19      The agency is advised that should it fail to identify the agency official charged with compliance, then the Board will presume that the highest-ranking appropriate agency official who is not appointed by the President by and with the consent of the Senate is charged with compliance.  *Id.*

¶20      The agency is further advised that failure to comply with this Order may result in the issuance of an order requiring the agency's representative and the

responsible agency official to appear before the Board to show cause why sanctions should not be imposed under 5 U.S.C. § 1204(a)(2) and (e)(2)(A).


FOR THE BOARD:                              /s/ for
                                           _____
                                           Jennifer Everling
                                           Acting Clerk of the Board
Washington, D.C.